**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| JCP INVESTMENT PARTNERSHIP, LP, a Texas limited partnership c/o Mr. James C. Pappas 1177 West Loop South Suite 1320 Houston TX 77027, | Civil Action No. |
| | |
| JCP INVESTMENT PARTNERS, LP, a Texas limited partnership, c/o Mr. James C. Pappas 1177 West Loop South Suite 1320 Houston TX 77027, | |
| | |
| JCP INVESTMENT HOLDINGS, LLC, a Texas limited liability company, c/o Mr. James C. Pappas 1177 West Loop South Suite 1320 Houston TX 77027, | |
| | |
| and | |
| | |
| JCP INVESTMENT MANAGEMENT, LLC, a Texas limited liability company, c/o Mr. James C. Pappas 1177 West Loop South Suite 1320 Houston TX 77027, | |
| Plaintiffs, | |
| v. | |
| | |
| WHEELER REAL ESTATE INVESTMENT TRUST, INC., a Maryland corporation, 1519 York Road Lutherville, Maryland 21093 | |
| | |
| SERVE ON: Cogency Global Inc. 1519 York Road Lutherville, Maryland 21093, | |

#732727

JEFFERY M. ZWERDLING
6204 Manaford Cir.
Glen Allen, Virginia 23059,

ANDREW R. JONES
8 Town Crier Ln.
Westport, Connecticut 06880,

DAVID A. KELLY
815 Arkansas 230
Cave City, Arkansas 72521,

JOHN P. MCAULIFFE
1451 W. Cypress Creek Road, 204
Fort Lauderdale, Florida 33309,

STEWART J. BROWN
2016 Collingwood Road
Alexandria, Virginia 22308,

JOHN SWEET
8761 Island Heights Lane
Mercer Island, Washington 98040,

and

SEAN F. ARMSTRONG
c/o Westport Capital Partners LLC
2121 Rosecrans Avenue
Suite 4325
El Segundo, California 90245,

                    Defendants.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

Plaintiffs, JCP Investment Partnership, LP, JCP Investment Partners, LP, JCP Investment

Holdings, LLC, and JCP Investment Management, LLC (hereinafter referred to collectively as

"Plaintiffs" or "JCP Investment"), by their undersigned attorneys, for their Complaint against

Defendants, Wheeler Real Estate Investment Trust, Inc., Jeffrey M. Zwerdling, Andrew R. Jones,

David A. Kelly, John P. McAuliffe, Stewart J. Brown, John Sweet, and Sean F. Armstrong

(hereinafter referred to collectively as "Defendants"), allege, upon knowledge as to themselves and upon information and belief as to all other matters, the following:

<u>**NATURE OF THE ACTION**</u>

1.      Plaintiffs, shareholders of Series D Cumulative Convertible Preferred Stock (the "Series D Preferred Stock") in Wheeler Real Estate Investment Trust, Inc. ("Wheeler"), bring this action to remedy damages caused by Wheeler's breach of the Articles Supplementary, a contract that governs the rights of all shareholders of Preferred Stock (the "Preferred Shareholders").

2.      In an attempt to avoid the mandatory redemption of Series D Preferred Stock triggered by Wheeler's failure to maintain sufficient net assets over obligations to Preferred Shareholders—a redemption event that would have resulted in a substantial cash payment to JCP Investment—Wheeler amended the provisions of the Articles Supplementary in violation of Maryland corporate law and without obtaining the contractually required consent from Preferred Shareholders.

3.      Wheeler's improper and unauthorized amendment materially changed an important investment protection upon which JCP Investment relied in purchasing the Series D Preferred Stock.  In particular, Wheeler relaxed the requirements for maintaining a ratio of net assets over outstanding obligations to Preferred Shareholders.  The unilateral amendment caused JCP Investment and other Preferred Shareholders to occupy a less secure position in connection with their continued interest in Wheeler and purported to avoid Wheeler's obligation to redeem JCP Investment's Series D Preferred Stock for a fixed amount of cash per share.

4.      The Court should declare Wheeler's unauthorized amendment invalid; enjoin further unauthorized amendments; and either compel Wheeler to redeem JCP Investment's

Series D Preferred Stock or enter judgment for the monetary damages JCP Investment sustained based on Wheeler's breach of its contractual duties to redeem JCP Investment's Series D Preferred Stock.

5.      Alternatively, if Wheeler's retroactive amendment to the investment terms is deemed enforceable, Wheeler's representations made in January 2018 to induce the purchase of Series D Preferred Stock were knowingly and intentionally rendered false by that retroactive amendment in violation of federal securities laws.  JCP Investment reasonably relied on these representations in purchasing preferred shares and has suffered economic damages as a result.

## PARTIES

6.      Plaintiff JCP Investment Partnership, LP is a limited partnership organized under the laws of the State of Texas with its principal executive offices located in Houston, Texas. Plaintiff JCP Investment Partnership, LP is an owner of Wheeler's Series D Preferred Stock. None of JCP Investment Partnership, LP's partners is a citizen of any State of which any Defendant is a citizen.

7.      Plaintiff JCP Investment Partners, LP is a limited partnership organized under the laws of the State of Texas with its principal executive offices located in Houston, Texas. Plaintiff JCP Investment Partners, LP is an owner of Wheeler's Series D Preferred Stock.  None of JCP Investment Partners, LP's partners is a citizen of any State of which any Defendant is a citizen.

8.      Plaintiff JCP Investment Holdings, LLC is a limited liability company organized under the laws of the State of Texas with its principal executive offices located in Houston, Texas.  Plaintiff JCP Investment Holdings, LLC is an owner of Wheeler's Series D Preferred

Stock.  None of JCP Investment Holdings, LLC's members is a citizen of any State of which any Defendant is a citizen.

9.      Plaintiff JCP Investment Management, LLC is a limited liability company organized under the laws of the State of Texas with its principal executive offices located in Houston, Texas.  Plaintiff JCP Investment Management, LLC is an owner of Wheeler's Series D Preferred Stock.  None of JCP Investment Management, LLC's members is a citizen of any State of which any Defendant is a citizen.

10.      Defendant Wheeler is a corporation incorporated under the laws of the State of Maryland, with its principal offices located at 1519 York Road Lutherville, Maryland.

11.      Defendant Jeffrey Zwerdling is an individual residing at 6204 Manaford Circle, Glen Allen, Virginia.  Mr. Zerdling was, at all times relevant to the allegations in the Complaint, a director of Wheeler.  He voted to authorize Wheeler's filing of the Certificate of Correction (as defined below).

12.      Defendant Andrew R. Jones is an individual residing at 8 Town Crier Lane, Westport, Connecticut.  Mr. Jones was, at all times relevant to the allegations in the Complaint, a director of Wheeler.  He voted to authorize Wheeler's filing of the Certificate of Correction (as defined below).

13.      Defendant David A. Kelly is an individual residing at 815 Arkansas 230, Cave City, Arkansas.  Mr. Kelly was, at all times relevant to the allegations in the Complaint, a director of Wheeler.  Mr. Kelly acted as Wheeler's Chief Executive Officer when Wheeler filed the Certificate of Correction (as defined below).  As a director, Mr. Kelly voted to authorize Wheeler's filing of the Certificate of Correction.

14.     Defendant John P. McAuliffe is an individual residing at 1451 W. Cypress Creek Road, 204, Fort Lauderdale, Florida.  Mr. McAuliffe was, at all times relevant to the allegations in the Complaint, a director of Wheeler.  He voted to authorize Wheeler's filing of the Certificate of Correction (as defined below).

15.     Defendant Stewart J. Brown is an individual residing at 2016 Collingwood Road, Alexandria, Virginia.  Mr. Brown was, at all times relevant to the allegations in the Complaint, a director of Wheeler.  He voted to authorize Wheeler's filing of the Certificate of Correction (as defined below).

16.     Defendant John Sweet is an individual residing at 8761 Island Heights Lane, Mercer Island, Washington.  Mr. Sweet was, at all times relevant to the allegations in the Complaint, a director of Wheeler.  He voted to authorize Wheeler's filing of the Certificate of Correction (as defined below).

17.     Defendant Sean F. Armstrong is an individual residing in California and employed with Westport Capital Partners LLC located at 2121 Rosecrans Avenue, Suite 4325, El Segundo, California.  Mr. Armstrong was, at all times relevant to the allegations in the Complaint, a director of Wheeler.  He voted to authorize Wheeler's filing of the Certificate of Correction (as defined below).

18.     Defendants Zwerdling, Jones, Kelly, McAuliffe, Brown, Sweet, and Armstrong, together, are referred to herein as the "Individual Defendants."

19.     At all times relevant to the allegation in the Complaint, the Individual Defendants, as senior executive officers and/or directors of Wheeler were privy to confidential and proprietary information concerning Wheeler, its operations, finances, financial condition, and present and future business prospects by access to internal corporate documents, conversations,

and connections with corporate officers and employees, attendance at management and board of

directors meetings and committees, and by reports and other information provided to them in

connection with Wheeler.

20.     The Individual Defendants are liable as direct participants with respect to the

wrongs complained of herein.  In addition, the Individual Defendants, by reason of their status as

senior executive officers and/or directors were "controlling persons" within the meaning of

Section 20 of the Exchange Act and had the power and influence to cause Wheeler to engage in

the unlawful conduct complained of herein.  Because of their positions of control, the Individual

Defendants were able to and did control the conduct of Wheeler's business.

21.     The Individual Defendants, because of their positions with Wheeler, controlled

and/or possessed the authority to control the contents of its reports and representations to the

prospective investors and purchasers of Series D Preferred Stock.  The Individual Defendants

were provided with copies of Wheeler's reports and prospectuses alleged to be misleading, prior

to or shortly after their issuance, and had the ability and opportunity to prevent their issuance.

Thus, the Individual Defendants had the opportunity to commit the fraudulent acts alleged.

22.     As a senior executive officer and/or a director and as a controlling person of a

publicly-traded company whose common stock was, and is, registered with the U.S. Securities

and Exchange Commission pursuant to the Securities Exchange Act of 1934 (the "Exchange

Act"), and was traded on the NASDAQ National Market ("NASDAQ") and governed by the

federal securities laws, each Individual Defendant had a duty to disseminate promptly accurate

and truthful information with respect to Wheeler's financial condition and performance,

operations, financial statements, business, products, markets, management, earnings, and present

and future business prospects, so that the purchases of Series D Preferred Stock would be based

upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions violated these specific requirements and obligations.

23.     The Individual Defendants are liable as participants in a fraudulent scheme and course of conduct that operated as a fraud or deceit on purchasers of Wheeler's Series D Preferred Stock by disseminating materially false and misleading statements and/or concealing material adverse facts.  The scheme: (i) deceived the purchasers of Series D Preferred Stock regarding Wheeler's business, operations, governance, and management; and (ii) caused Plaintiffs to purchase Wheeler's Series D Preferred Stock in reliance on Wheeler's false and misleading representations.

## JURISDICTION AND VENUE

24.     This is a federal action on behalf of purchasers of the securities of Wheeler seeking to pursue remedies under the Exchange Act.

25.     The claims asserted in this Complaint arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a)) and Rule 10b-5 promulgated thereunder by the U.S. Securities and Exchange Commission (17 C.F.R. § 240.10b-5).

26.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

27.     The Court has jurisdiction over the subject matter of Counts I and II pursuant to 28 U.S.C. § 1367.

28.     This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the citizenship of the parties is diverse and the amount in controversy exceeds $75,000.

29.     Venue is proper in this Court under 28 U.S.C. § 1391(b).

30.     In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not

limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## FACTUAL ALLEGATIONS

### *Company Overview*

31.      Wheeler operates as a real estate investment trust (REIT), formed with the primary objective of acquiring, financing, developing, leasing, owning, and managing income producing assets such as strip centers, neighborhood centers, grocery-anchored centers, community centers, and free-standing retail properties.  Wheeler's common stock and Series D Preferred Stock are traded on the NASDAQ under the symbols "WHLR" and "WHLRD," respectively.  Wheeler has total assets of $489.38 million as of December 31, 2020.

### *The Articles Supplementary*

32.      On September 16, 2016, Wheeler amended its charter by filing Articles Supplementary with the State Department of Assessments and Taxation (the "September 2016 Articles Supplementary").  The September 2016 Articles Supplementary authorized Wheeler to issue up to 2,500,000 shares of Series D Preferred Stock.

33.      The Series D Preferred Stock was an attractive investment for investors.  Wheeler owed the holders of Series D Preferred Stock the obligation to maintain a certain ratio of net asset value over the outstanding obligations to preferred stockholders.  This asset coverage requirement helped ensure that, at all times, Wheeler maintained adequate net asset value to provide a maximum return to the holders of Series D Preferred Stock, even in the event that Wheeler began to experience financial distress.  If the asset coverage dips below the required ratio, Wheeler is required to redeem sufficient Series D Preferred Stock to return the asset coverage to the required ratio.

34.     As stated in Paragraph 10 of the September 2016 Articles Supplementary:

**Mandatory Redemption for Asset Coverage.**

***If the Corporation fails to maintain asset coverage of at least 200%*** calculated by determining the percentage value of (i) the Corporation's total assets plus accumulated depreciation minus the Corporation's total liabilities and indebtedness as reported in the Corporation's financial statements prepared in accordance with accounting principles generally accepted in the United States ("GAAP") (exclusive of the book value of any Redeemable and Term Preferred Stock (as defined herein), over (ii) the aggregate liquidation preference, plus an amount equal to all accrued and unpaid dividends, of the outstanding Series D Preferred Stock and any outstanding shares of term Preferred Stock or Preferred Stock providing for a fixed mandatory redemption date or maturity date ("Redeemable and Term Preferred Stock") on the last Business Day of any calendar quarter ("Asset Coverage Ratio"), ***and such failure is not cured by the close of business on the date that is 30 calendar days following the filing date of the Corporation's Annual Report on Form 10-K or Quarterly Report on Form 10-Q***, as applicable, for that quarter (such date, the "Asset Coverage Cure Date"), ***then the Corporation shall redeem, within 90 calendar days of the Asset Coverage Cure Date, shares of Redeemable and Term Preferred Stock, which may include Series D Preferred Stock***, at least equal to the less of (x) the minimum number of shares Redeemable and Term Preferred Stock that will result in the Corporation having an Asset Coverage Ration of at least 200% and (y) the maximum number of shares of Redeemable and Term Preferred Stock that can be redeemed solely out of funds legally available for such redemption.   In connection with any redemption for failure to maintain such Asset Coverage Ratio, the Corporation may, in its sole option, redeem any shares of Redeemable and Term Preferred Stock it selects, including on a non-pro rata basis.  The Corporation may elect not to redeem any Series D Preferred Stock to cure such failure as long as the Corporation cures its failure to meet the Asset Coverage Ratio by or on the Asset Coverage Cure Date.

\*\*\*

***If shares of Series D Preferred Stock are to be redeemed for failure to maintain the Assert Coverage Ratio, such shares shall be redeemed solely in cash at a redemption price equal to $25.00 per share plus an amount equal to all accrued by unpaid dividends***, if any, on such shares (whether or not declared) to and including the redemption date and otherwise in accordance with the procedures

for redemption described in Section 7 above, with the notice specifying that such redemption is being made in accordance with the Corporation's covenant to maintain the Asset Coverage Ratio.

*See* Exhibit A attached hereto (emphasis added).

35.     As additional protection for holders of Series D Preferred Stock, the September 2016 Articles Supplementary provided that their rights could not be changed in a material way unless the preferred stockholders approved the modification by two-thirds affirmative vote. Paragraph 11(g) of the September 2016 Articles Supplementary provides:

**Voting Rights.**

(g)   So long as any shares of Series D Preferred Stock remain outstanding, the holders of shares of Series D Preferred Stock also shall have the exclusive right to vote on any amendment, alteration or repeal of the Charter, including the terms of the Series D Preferred Stock, that would alter only the contract rights, as expressly set forth in the Charter, of the Series D Preferred Stock, and the holders of any other classes or series of capital stock of the Corporation shall not be entitled to vote on any such amendment, alteration or repeal. Any such amendment, alteration or repeal shall require the affirmative vote or consent of the holders of two-thirds of the shares of Series D Preferred Stock issued and outstanding at the time.

36.     Jon Wheeler ("Mr. Wheeler"), founder of Wheeler and its Chief Executive Officer and President until early 2018, was personally involved with multiple reviews and final approval of the September 2016 Articles Supplementary.

37.     The September 2016 Articles Supplementary was unanimously confirmed by Wheeler's Board of Directors.

38.     As Mr. Wheeler has testified under oath, the formula in Paragraph 10 is an accurate reflection of Wheeler's intentions at the time the September 2016 Articles Supplementary were filed.  The Asset Coverage Ratio and mandatory redemption clause were

included in the September 2016 Articles Supplementary as a check and balance for Wheeler, and compliance with the ratio was essential to the Wheeler's financial health.

39.     A subsequent Articles Supplementary filed by Wheeler in December of 2016 authorized the issuance of an additional 1,500,000 shares of Series D Preferred Stock (the "December 2016 Articles Supplementary").  This offering contained the identical formula for asset coverage for mandatory redemption with no typographical errors or inadvertent omissions.

40.     The December 2016 Articles Supplementary provides that "[a] description of the preferences…and other rights, voting powers, restrictions, limitations as to dividends and other distributions, qualifications, terms and conditions of redemption and other terms and conditions of the Series D Preferred Stock is set forth in the Articles Supplementary filed with, and accepted for the record by, the Department on September 2016." *See* Exhibit B attached hereto.

41.     The December 2016 Articles Supplementary therefore affirms the terms and conditions of the September 2016 Articles Supplementary, including its formula for asset coverage for mandatory redemption.

### *Wheeler Affirms the Mandatory Redemption Provision in Various SEC Filings*

42.     On September 13, 2016, Wheeler filed a Prospectus Supplement (Form 424B5) under SEC Rule 424(b)(5) for the Series D Preferred Stock.  The September 2016 Prospectus contained the same provision with respect to Mandatory Redemption for Asset Coverage.

43.     On September 19, 2016, Wheeler filed a Registration Statement (Form 8-A) pursuant to Section 12(b) of the Exchange Act.  The September 2016 Registration Statement "incorporated by reference" the September 2016 Articles Supplementary, including the provision with respect to Mandatory Redemption for Asset Coverage.

44.     On December 1, 2016, Wheeler filed a Prospectus Supplement (Form 424B5) under SEC Rule 424(b)(5) for the Series D Preferred Stock.  The December 2016 Prospectus contained the same provision with respect to Mandatory Redemption for Asset Coverage.

45.     On January 11, 2018, Wheeler filed a Prospectus Supplement (Form 424B5) under SEC Rule 424(b)(5) for the Series D Preferred Stock.  The January 2018 Prospectus contained the same provision with respect to Mandatory Redemption for Asset Coverage.

### *Wheeler Forecasts Tripping the Asset Coverage Ratio and Attempts to Identify Strategies to Avoid Mandatory Redemption of Series D Preferred Stock*

46.     At or around the time Wheeler filed the December 2016 Articles Supplementary, Wheeler was considering the acquisition of JANAF Shopping Yard ("JANAF"), an 887,917 rentable square foot shopping center located in Norfolk, Virginia (the "JANAF Acquisition"). The JANAF Acquisition would be the largest transaction in Wheeler's history.

47.     As then-CEO Mr. Wheeler testified, Wheeler's management and Board of Directors understood that the JANAF Acquisition might cause Wheeler to fall out of compliance with the Asset Coverage Ratio set forth in the September 2016 Articles Supplementary.

48.     Wheeler enlisted a committee of a "Team of Five" to address various company issues, including the possibility of "tripping" the Asset Coverage Ratio covenant.  The Team of Five analyzed strategies to increase assets and even created sensitivity profiles for potential ratio "trips."

49.     The Team of Five reported to Wheeler's board by email, conference calls, or board meeting presentations.  It analyzed whether Wheeler could unilaterally add back "accumulated amortization" to the asset coverage ratio formula.  The Team of Five discussed whether a Certificate of Correction could be used to add back "accumulated amortization."

50.     After considering this strategy, Mr. Wheeler and the Team of Five concluded

Wheeler could not file a Certificate of Correction without the required approval by 66% of the

Preferred Shareholders.

51.     Crystal Plum, Wheeler's Director of Financial Reporting ("Ms. Plum"), and

Matthew Reddy, Wheeler's Chief Accounting Officer ("Mr. Reddy"), worked closely with one

member of the Team of Five, Wilkes Graham, Wheeler's CFO ("CFO Graham").  Emails

between CFO Graham, Ms. Plum, and Mr. Reddy confirm that "accumulated amortization" was

not part of, and could not be added back to, the asset coverage ratio formula.

52.     As of July 2017, CFO Graham, Ms. Plum, and Mr. Reddy had a full

understanding and awareness of the formula for the asset coverage ratio as they attempted to

project future "trips" in the event Wheeler could, upon approval of the Preferred Shareholders,

include "accumulated amortization" in the ratio formula.

53.     In August 2017, CFO Graham made a presentation to Wheeler's Board of

Directors outlining the structure of a future planned "trip."  Slide Two stated: "We are scheduled

to trip the Series D Asset Coverage Test covenant at 12/31/2017.  We will be required to redeem

$3.5M of Series D Preferred Stock at par, with cash, each quarter, unless we find another

solution."  The impending "trip" of the mandatory redemption clause was apparent as Slide Two

noted that "[w]e need to solve the Series D covenant issue, generate more cash flow. Both

initiatives should increase the stock."  Slide 13 underscored Wheeler's understanding of the asset

coverage formula by stating: "the Series D covenant does not allow us to add back

Amortization."  Slide 14 listed five possible solutions to the mandatory redemption problem,

none of which included adding back accumulated amortization.

54.     Based on extensive discussions among the Team of Five, Wheeler had concluded in 2017 that adding back accumulated amortization was not a viable possible solution to the risk of tripping the coverage covenant.  Email exchanges between CFO Graham, Ms. Plum, and Mr. Reddy echoed this conclusion.  On October 19, 2017, looking for other options to avoid mandatory redemption, CFO Graham stated, "[b]ut if we can't fight amortization maybe we can fight this?"  On October 23, 2017, Ms. Plum confirmed that the Asset Coverage Ratio does not permit Wheeler to "add back amortization."

55.     The impending Asset Coverage Ratio "trip" led Wheeler to file publicly with the S.E.C. a Form 10-K pronouncing Wheeler "may not comply with the asset coverage ratio contained in the terms of our Series D preferred stock."  The Form 10-K recited the same asset coverage ratio formula contained in the September 2016 Articles Supplementary.

**Wheeler Issues New Shares and Then, under Different Leadership, Attempts to Circumvent the Asset Coverage Ratio by Filing an Unauthorized Certificate of "Correction"**

56.     On January 10, 2018, Wheeler's Board of Directors (including Individual Defendants), Officers, and various guests participated in a conference call to discuss a new Series D Preferred Stock offering.  Participants discussed CFO Graham's sensitivity analysis pertaining to future "trips," and Mr. Wheeler explained that investor calls had been difficult, with "most accounts inquiring about the long-term strategy of the company."

57.     Ultimately, Wheeler's Board of Directors (including Individual Defendants) authorized an additional Series D Preferred Stock offering and, on January 11, 2018, Wheeler filed a Prospectus Supplement offering an additional 1,303,000 shares of Series D Preferred Stock.  The Prospectus Supplement again informed shareholders that Wheeler may not comply with the asset coverage ratio, which the Prospectus described as the same formula from the

September 16, 2016 Articles Supplementary.  The Prospectus further acknowledged Wheeler's

obligation to redeem Series D Preferred Stock in the event of a "trip":

> ### We may not comply with the Asset Coverage Ratio contained in the terms of our Series D Preferred Stock.
>
> The terms of our Series D Preferred Stock require us to maintain a certain level of asset coverage. More specifically, we are required to maintain an asset coverage percentage of at least 200% on the last business day of each calendar quarter. This percentage is calculated by dividing (i) our total assets plus accumulated depreciation minus our total liabilities and indebtedness as reported in our financial statements (exclusive of the book value of any Redeemable and Term Preferred Stock) by (ii) the aggregate liquidation preference, plus an amount equal to all accrued and unpaid dividends, of the outstanding shares of our Series D Preferred Stock and any outstanding shares of Redeemable and Term Preferred Stock. If we fail to satisfy the Asset Coverage Ratio, we must cure the failure during the period that expires at the close of business on the date that is 30 calendar days following the filing date of our Annual Report on Form 10-K or Quarterly Report on Form 10-Q, as applicable, for that quarter. If we fail to cure the failure prior to the Asset Coverage Cure Date, the terms of our Series D Preferred Stock require us to redeem, within 90 calendar days of the Asset Coverage Cure Date, shares of Redeemable and Term Preferred Stock, which may include Series D Preferred Stock, at least equal to the lesser of (i) the minimum number of shares of Redeemable and Term Preferred Stock that will result in us having an Asset Coverage Ratio of at least 200% and (ii) the maximum number of shares of Redeemable and Term Preferred Stock that can be redeemed solely out of funds legally available for such redemption.
>
> There can be no guarantee that we will continue to comply with the Asset Coverage Ratio in the future. As a result of the terms of this offering, *we could fail to satisfy the Asset Coverage Ratio later in 2018 unless we are able to raise additional equity capital.* To the extent we fail to satisfy the Asset Coverage Ratio and are required to redeem shares of our Series D Preferred Stock, our business and its operations may be materially and adversely impacted.

Exhibit C at S-21-22 (emphasis added); *see also* Ex. C at S-10-11 & S-26.

58.     Thus, while Wheeler continued to offer Series D Preferred Stock to Preferred Shareholders, Wheeler acknowledged that it could fail to satisfy the Asset Coverage Ratio, which would require Wheeler to redeem certain shares of preferred stock, including Series D Preferred Stock, at a redemption price equal to $25.00 per share plus an amount equal to all accrued by unpaid dividends, pursuant to the provision with respect to Mandatory Redemption for Asset Coverage.

59.     In February 2018, Wheeler's Board of Directors (including Individual Defendants) met to discuss the status of the company.  The board specifically referenced a "Memo" from January 19, 2018.  The "Memo" documented that the new CEO and President, David Kelly ("CEO Kelly"), had reached out to investors to discuss an amendment to Wheeler's charter.  The Memo confirmed that the company would "trip" the Series D covenant in March 2018.

60.     On an April 23, 2018, CEO Kelly conveyed to the board (including Individual Defendants) that Wheeler had to hold meetings with Preferred Shareholders and that only an amendment to the formula for the asset coverage ratio—which required a vote and approval of two-thirds of the holders of Series D Preferred Stock—would solve the mandatory redemption issue in perpetuity.

61.     Although knowing the holders of Series D Preferred Stock would never approve such a measure, on April 26, 2018, Wheeler's Board of Directors approved the filing of a Certificate of Correction to skirt their obligations to the holders of Series D Preferred Stock under the mandatory redemption clause.  All of the Individual Defendants attended the April 26 meeting and voted in favor of filing the Certificate of Correction.

62.     On May 3, 2018, Wheeler filed with the Maryland State Department of Assessments and Taxation a Certificate of Correction (the "Certificate of Correction"). *See* Exhibit D.  CEO Kelly executed the Certificate of Correction.  The Certificate of Correction sought to introduce the following brand-new terms into the Articles Supplementary, which set forth the rights of the Preferred Shareholders, by way of the provision with respect to Mandatory Redemption for Asset Coverage:

| Applicable Language Section in 10(a) (Mandatory Redemption for Asset Coverage) ***Prior*** to the Filing of the Certificate of Correction | Applicable Language Section 10(a) (Mandatory Redemption for Asset Coverage) ***After*** the Filing of the Certificate of Correction |
|---|---|
| If the Corporation fails to maintain asset coverage of at least 200% calculated by determining the percentage value of (i) the Corporation's total assets plus accumulated depreciation minus the Corporation's total liabilities and indebtedness as reported in the Corporation's financial statements prepared in accordance with accounting principles generally accepted in the United States ("GAAP") (exclusive of the book value of any Redeemable and Term Preferred Stock (as defined herein)) | If the Corporation fails to maintain asset coverage of at least 200% calculated by determining the percentage value of (i) the Corporation's total assets plus accumulated depreciation ***and accumulated amortization*** minus the Corporation's total liabilities and indebtedness as reported in the Corporation's financial statements prepared in accordance with accounting principles generally accepted in the United States ("GAAP") (exclusive of the book value of any Redeemable and Term Preferred Stock (as defined herein)) |

**Table 1**

63.     The added reference to "accumulated amortization" in the May 3, 2018 Certificate of Correction significantly and materially altered the terms of the Series D Preferred Stock and the rights of the Preferred Shareholders.

64.     The Series D Preferred Stockholders did not vote to approve the change to the definition of Asset Coverage Ratio.

65.     "Accumulated amortization" does not represent actual new value acquired by Wheeler.  Rather, it is simply a different accounting category of "value."  When added to the

formula for Asset Coverage Ratio, "accumulated amortization" immediately increases the value

of the numerator of the ratio and alters the calculation of Asset Coverage Ratio.  Therefore, the

modified definition unilaterally and significantly relaxed the terms under which Wheeler was

required to redeem preferred shares, including Series D Preferred Stock at $25.00 per share,

pursuant to the provision requiring Mandatory Redemption for Asset Coverage.

### *Wheeler Breaches the Articles Supplementary*

66.     On May 9, 2018, a mere six days after it filed the Certificate of Correction,

Wheeler filed its Quarterly Report (Form 10-Q) pursuant to Section 13 of the Exchange Act for

the quarterly period ended March 31, 2018 (the "Quarterly Report").

67.     In the Quarterly Report, Wheeler disclosed relevant information regarding its

current financial condition.

68.     The financial information disclosed in the Quarterly Report establishes that, but

for the unauthorized Certificate of Correction, Wheeler would have been required to redeem

preferred shares because it would have failed to maintain asset coverage of at least 200%.  The

Asset Coverage Ratio as of March 31, 2018 with and without the unauthorized Certificate of

Correction is calculated below:

| *Asset Coverage Ratio Without Filing of Unauthorized Certificate of Correction* | | *Asset Coverage Ratio based on Unauthorized Certificate of Correction* | |
|---|---|---|---|
| Total Assets | 543 | Total Assets | 543 |
| Accumulated Depreciation | 34 | Accumulated Depreciation | 34 |
| N/A | | Accumulated Amortization | 45 |
| Adjusted Assets | 577 | Adjusted Assets | 622 |
| Total Liabilities | 401 | Total Liabilities | 401 |
| Adjusted Equity | 176 | Adjusted Equity | 221 |
| Series D Preferred Stock | 90 | Series D Preferred Stock | 90 |
| Asset Coverage Ratio | 1.96 | Asset Coverage Ratio | 2.46 |

**Table 2**

69.     The unauthorized Certificate of Correction filed by Wheeler significantly and materially altered the terms of the Series D Preferred Stock and the rights of the Preferred Shareholders.  Under the unauthorized "corrected" provision with respect to Mandatory Redemption for Asset Coverage, Wheeler has no obligation to redeem preferred shares, including the Series D Preferred Stock at $25.00 per share, when it fails to cure the asset coverage deficiency under the September 2016 Articles Supplementary by the Asset Coverage Cure Date.

70.     Since March 2018, Wheeler has reported artificially elevated Asset Coverage Ratios and has failed in any quarter to achieve the Asset Coverage Ratio required under the September 2016 Articles Supplementary.  As a result, Wheeler has operated, and continues to operate, in a weaker financial position than what the original September 2016 Articles Supplementary allowed.

71.     Wheeler has not complied with the terms upon which JCP Investment agreed to purchase Series D Preferred Stock, and consequently JCP Investment's investment in Wheeler is substantially less secure.

### The Certificate of "Correction" is Invalid and Unenforceable

72.     Pursuant to Section 1-207 of the Code of Maryland, Corporations and Associations Article, a Certificate of Correction to a charter document such as the September 2016 Articles Supplementary may only be filed to correct "typographical errors" or "errors of transcription."  Md. Code Ann., Corps. & Ass'ns § 1-207 (West).

73.     Section 1-207 states that a certificate of correction may not:

> [i] Alter the wording of any resolution which was adopted by the board of directors, the board of trustees, the stockholders, or the shareholders of a party to the document being corrected; or

> [ii] Make any other change or amendment which would not have complied in all respects with the requirements of this article at the time the document being corrected was filed.

> ***

> [iii] Change the effective date of the document being corrected; or

> [iv] ***_Affect any right or liability accrued or incurred before its filing_***, except that any right or liability accrued or incurred by reason of the error or defect being corrected shall be extinguished by the filing if the person having the right has not detrimentally relied on the original document.

*Id*. (emphasis added).

74.     Similarly, Section 11(g) of the September 2016 Articles Supplementary provides, in relevant part, the following: "[s]o long as any shares of Series D Preferred Stock remain outstanding, the holders of shares of Series D Preferred Stock also shall have the ***_exclusive right to vote on any amendment, alteration or repeal_*** of the Charter, including the terms of the Series

D Preferred Stock, that would alter only the contract rights…of the Series D Preferred Stock."
Ex. A § 11(g) (emphasis added).

75.     Despite the "exclusive right to vote" required by Section 11(g) for "any amendment," Wheeler unilaterally modified the Preferred Shareholders' rights and the terms of the Series D Preferred Stock by filing the Certificate of Correction, without seeking or obtaining the Preferred Shareholders' consent, or allowing the Preferred Shareholders to vote.

76.     Because the Certificate of Correction significantly and materially altered the terms of the Series D Preferred Stock and the rights of the Preferred Shareholders without a vote, it was filed in breach of the September 2016 Articles Supplementary and in violation of Section 1-207 of the Code of Maryland, Corporations and Associations, therefore making it invalid and unenforceable.

77.     Because the Certificate of Correction was invalid and unenforceable, at all times relevant, Wheeler was required to maintain asset coverage of at least 200% according to the terms of the original September 2016 Articles Supplementary.

78.     Nevertheless, the Quarterly Report filed on May 9, 2018 establishes that Wheeler failed to maintain asset coverage of at least 200%, in breach of the Articles Supplementary as they existed prior to the unauthorized Certificate of Correction.

79.     In addition, under the terms of the valid and operational provision with respect to Mandatory Redemption for Asset Coverage in effect prior to the filing of the Certificate of Correction, Wheeler was required to cure its failure to maintain asset coverage of at least 200% by the close of business on the date that is 30 calendar days following the filing date of the Quarterly Report, which was June 8, 2018.

80.     On May 18, 2018, JCP Investment notified Wheeler of its failure to maintain asset coverage of at least 200% in breach of the Articles Supplementary and of its obligation to cure the failure on or before June 8, 2018.

81.     Wheeler stated it has no intention of curing the Asset Coverage Ratio deficiency and/or otherwise complying with its obligations under the September 2016 Articles Supplementary (before any unauthorized amendment), including the obligation to redeem preferred shares, including the Series D Preferred Stock, as required under the provision with respect to Mandatory Redemption for Asset Coverage.

82.     For all quarters after the Quarterly Report filed in May 2018, Wheeler has failed to maintain the Asset Coverage Ratio required by the original Articles Supplementary and has wrongfully failed to redeem JCP Investment's Series D Preferred Stock pursuant to the Mandatory Redemption provisions.

83.     The actions of Wheeler in filing the Certificate of Correction, failing to maintain asset coverage of at least 200% in violation of the September 2016 Articles Supplementary (before any unauthorized amendment), and declaring it has no intention of otherwise complying with the terms of September 2016 Articles Supplementary constitute a breach of contract.

### *If the Certificate of Correction is Enforceable, Defendants Intentionally Rendered the January 2018 Prospectus Supplement Materially False and Misleading*

84.     In the event that the Certificate of Correction is deemed enforceable, its filing rendered the statements in the January 2018 Prospectus Supplement false and misleading.  In the January 2018 Prospectus Supplement, Wheeler represented to potential investors that it calculates the Asset Coverage Ratio based on a formula described in those documents and that

holders of Series D Preferred Stock had mandatory redemption rights based upon a failure of Wheeler to satisfy the ratio as represented in those documents.  Ex. C at S-10-11 & S-21-22.

85.     Wheeler also represented that holders of Series D Preferred Stock were entitled to vote on amendments to the Articles Supplementary that materially and adversely affect the terms of the Series D Preferred Stock.  Ex. C at S-14.  According to the January 2018 Prospectus Supplement, Wheeler had no authority to make such an amendment to the Articles Supplementary without obtaining the affirmative vote or consent of holders of at least two-thirds of the outstanding shares of Series D Preferred Stock.  *Id*.

86.     The January 2018 Prospectus Supplement did not caution investors of the risk that Wheeler would attempt to alter materially the formula for calculating the Asset Coverage Ratio or that Wheeler would alter the formula without obtaining the required consent or affirmative vote of the holders of Series D Preferred Stock.

87.     In purchasing Series D Preferred Stock, JCP Investment relied on the statements in the January 2018 Prospectus Supplement, including the representations regarding the mandatory redemption rights of holders of preferred shares upon Wheeler's failure to meet the Asset Coverage Ratio as described in the prospectus as well as the preferred shareholders' voting rights with respect to amendments to the Articles Supplementary.

88.     It was reasonable for JCP Investment to rely upon the January 2018 Prospectus Supplement in purchasing Series D Preferred Stock.  The prospectus was more than 120 pages in length, marked with Wheeler's trade logo and the registration number associated with Wheeler's SEC registration statement, and prepared and distributed by a well-recognized investment bank, Ladenburg Thalmann & Co. Inc.

89.     With knowledge of the representations in the January 2018 Prospectus Supplement and restrictions on amending the September 2016 Articles Supplementary, Wheeler filed the Certificate of Correction without approval of the holders of Series D Preferred Stock. The Certificate of Correction, if enforceable, materially changed the terms of the September 2016 Articles Supplementary and caused the January 2018 Prospectus Supplement to be false. When Wheeler retroactively changed the investment terms that it represented to induce investors, including JCP Investment, to purchase Series D Preferred Stock, the statements about those terms set forth in the January 2018 Prospectus Supplement became misrepresentations.

90.     Defendants acted with scienter in that they knew that the statements issued in the January 2018 Prospectus Supplement were made materially false and misleading by the issuance of the Certificate of Correction.  Defendants demonstrated their knowledge of the falsity of the statements through internal and board communications before and after issuing the January 2018 Prospectus Supplement.  In those communications, as detailed above, CEO Kelly, CFO Graham, Ms. Plum, and Mr. Reddy acknowledged that the September 2016 Articles Supplementary and January 2018 Prospectus Supplement required the calculation of Asset Coverage Ratio without accounting for "accumulated amortization."  They also acknowledged that the 2016 Articles Supplementary did not permit the alteration of the formula to add "accumulated amortization" without an affirmative vote in favor of the change by two-thirds of the holders of Series D Preferred Stock.  The Individual Defendants were made aware of the representations made to investors and the restrictions on alterations to the rights of holders of Series D Preferred Stock.

91.     With knowledge of the terms represented to investors, including investors that purchased Series D Preferred Stock following the January 2018 offering, Defendants knowingly and intentionally made those representations materially false in order to avoid the consequences

of tripping the mandatory redemption requirement and paying fixed redemption prices to holders of Series D Preferred Stock.

92.     At the direction and with the approval of the Individual Defendants, Wheeler knowingly made false representations of material fact to JCP Investment regarding the operations, business, and governance of Wheeler, as well as the rights and entitlements to be afforded to JCP Investment upon its purchase of Series D Preferred Stock.

93.     The false representations and reckless or intentional omissions of material facts concerning Wheeler's operations, business, and governance were made at the time Wheeler issued the January 2018 Prospectus Supplement.  Because the Certificate of Correction, if enforceable, retroactively altered the terms of an investment in Series D Preferred Stock, the representations about those terms made in the January 2018 Prospectus Supplement became false as of the time they were made.  Defendants knew that the Certificate of Correction, if enforceable, would cause the statements in the January 2018 Prospectus Supplement to be false as of the time the statements were made.

### *The First Lawsuit Does Not Remedy Wheeler's Breach*

94.     On June 18, 2018, JCP Investment Partnership LP, a Plaintiff, and JCP Investment Partnership II Master Fund LP, a predecessor in interest to other Plaintiffs, brought an action in the Circuit Court for Baltimore County, Maryland, Case No. 03-C-18-00649, seeking a declaratory judgment, injunction, and money judgment against Wheeler based on its improper and unauthorized change to the Articles Supplementary and failure to redeem Plaintiffs' Series D Preferred Stock.  The parties entered into a confidential "Settlement Agreement," pursuant to which they stipulated to dismissal of the case ***without*** prejudice on

February 13, 2020.  The parties intended to work together outside of litigation to try to resolve Wheeler's breaches.

95.     Since the dismissal of the suit, Wheeler has not cured its violations of the Articles Supplementary and Maryland law and the parties have not otherwise resolved their disputes. JCP Investment now brings this action to enforce its rights and obtain a judicial remedy for the breaches of Wheeler's obligations and Defendants' fraud.

## CAUSES OF ACTION

### Count I
### Declaratory Judgment (28 U.S.C. § 2201)
### (All Defendants)

96.     Plaintiffs incorporate by reference all of the foregoing paragraphs of this Complaint as if fully set forth herein.

97.     Plaintiffs are affected by Defendants' unlawful conduct and Wheeler's violation of the Articles Supplementary and Maryland corporate law.

98.     As a result of Wheeler's conduct, Plaintiffs have suffered and will continue to suffer damages and harm.

99.     Pursuant to the 28 U.S.C. § 2201 and 2202, Plaintiffs request a declaration that:

   a.  the Certificate of Correction was filed in violation of the September 2016 Articles Supplementary and is therefore unlawful and unenforceable;

   b.  the Certificate of Correction was filed in violation of Section 1-207 of the Code of Maryland, Corporations and Associations and is therefore unlawful and unenforceable;

   c.  the September 2016 Articles Supplementary is the operative contract with respect to the terms of the Series D Preferred Stock and the rights of the Preferred Shareholders;

   d.  Plaintiffs have vested rights in the Series D Preferred Stock as those rights are described in the September 2016 Articles Supplementary and January 2018 Prospectus Supplement;

    e.   Wheeler's conduct described herein constitutes a breach of the September 2016 Articles Supplementary; and

    f.   Wheeler must redeem Plaintiffs' Series D Preferred Stock pursuant to the terms of the Mandatory Redemption for Asset Coverage provision set forth in the September 2016 Articles Supplementary.

100.   The issuance of declaratory relief is necessary and appropriate because an actual, substantial controversy exists among parties that have adverse legal interests of sufficient immediacy and reality that determination of the issues by a judicial declaration will aid in the resolution of the parties' dispute.  Therefore, Plaintiffs' Complaint presents a justiciable controversy that is ripe for judicial determination.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court enter Judgment in their favor and against Defendants:

A.   Declaring that the Certificate of Correction was filed in violation of the 2016 Articles Supplementary and, therefore, is void and of no legal force and effect;

B.   Declaring that the Certificate of Correction was filed in violation of Section 1-207 of the Code of Maryland, Corporations and Associations and, therefore, is void and of no legal force and effect;

C.   Declaring that Wheeler failed, in the first quarter of 2018 and for every quarter thereafter, to maintain asset coverage of at least 200% under the September 2016 Articles Supplementary;

D.   Declaring that Wheeler is required to redeem Plaintiffs' Series D Preferred Stock, in accordance with the Mandatory Redemption for Asset Coverage section of the September 2016 Articles Supplementary;

E.   Declaring that Plaintiffs are entitled to prejudgment interest on the amount they were entitled to receive upon redemption of their Series D Preferred Stock following the first quarter of 2018 and for every quarter thereafter as a result of Wheeler's failure to maintain the Asset Coverage Ratio as defined in the September 2016 Articles Supplementary;

F.   Declaring that Wheeler is otherwise required to comply with the September 2016 Articles Supplementary;

G.   Declaring that Plaintiffs have vested rights in the Series D Preferred Stock as those rights are described in the September 2016 Articles Supplementary and January 2018 Prospectus Supplement;

H.   Enjoining Wheeler from continuing to violate the September 2016 Articles Supplementary and compelling it to redeem Plaintiffs' Series D Preferred Stock, in accordance with the Articles Supplementary;

I.   Awarding to Plaintiffs and against Defendants the costs, expenses, and attorneys' fees that Plaintiffs incurred in instituting and prosecuting this action; and

J.   Providing for such other and further relief as the Court deems just and equitable.

**Count II**
**Breach of Contract**
**(Wheeler)**

101.   Plaintiffs incorporate by reference all of the foregoing paragraphs of this Complaint as if fully stated herein.

102.   At all times relevant to Plaintiffs' claims, Plaintiffs were parties and subject to the 2016 Articles Supplementary.

103.   Wheeler breached and violated the September 2016 Articles Supplementary by:

a.   Altering the rights of the Preferred Shareholders and the Series D Preferred Stock without holding a vote of the Preferred Shareholders as required under the September 2016 Articles Supplementary;

b.   Failing to maintain asset coverage of at least 200% according to the terms of the provision with respect to Mandatory Redemption for Asset Coverage, as required under the September 2016 Articles Supplementary (prior to any unauthorized modification);

c.   Failing to cure the asset coverage deficiency by the close of business on the date that is 30 calendar days following the filing date of each Quarterly Report following March 2018; and

d.   Otherwise declaring it has no intention of complying with its obligations under the September 2016 Articles Supplementary, including the obligation to redeem

Plaintiffs' Series D Preferred Stock, as required under the provision with respect to Mandatory Redemption for Asset Coverage.

104.   Plaintiffs have been harmed as a direct and proximate result of Wheeler's breaches of contract.

105.   Plaintiffs have incurred damages in an amount in excess of $75,000 as a direct and proximate result of Wheeler's breaches of the 2016 Articles Supplementary.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court enter Judgment in their favor and against Wheeler:

A.   Awarding to Plaintiffs and against Wheeler compensatory damages in an amount sufficient to compensate them for their losses to be determined by the Court, plus prejudgment interest;

B.   Awarding to Plaintiffs and against Wheeler the costs, expenses, and attorneys' fees that Plaintiffs incurred in instituting and prosecuting this action;

C.   Enjoining Wheeler from continuing to violate the September 2016 Articles Supplementary and compelling it to redeem Plaintiffs' Series D Preferred Stock, in accordance with the Articles Supplementary; and

D.   Providing for such other and further relief as the Court deems just and equitable.

### Count III
### Violation of Section 10(b) of the Exchange Act and Rule 10b-5
### (All Defendants)

106.   Plaintiffs incorporate by reference all of the foregoing paragraphs of this Complaint as if fully stated herein.

107.   Defendants deceived Plaintiffs, as alleged herein, and caused Plaintiffs to purchase Wheeler's securities, namely Series D Preferred Stock.

108.   Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the

statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of Wheeler's securities in an effort to induce investors, including Plaintiffs, to purchase Wheeler's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.

109.    Defendants, by the use, means, or instrumentalities of interstate commerce and/or of the mails, engaged and participated in conduct to distribute false material information about Wheeler's business, Wheeler's governing documents, the rights of preferred shareholders, and Wheeler's future prospects as specified in this Complaint.

110.    Defendants employed devices, schemes, and artifices to defraud and engaged in acts, practices, and a course of conduct in an effort to induce investment in Wheeler and its performance and continued growth, which included the making of, or the participation in the making of, untrue statements of material facts; and Defendants engaged in transactions, practices, and a course of business that operated as a fraud and deceit upon the purchasers of Wheeler's securities.

111.    Defendants had actual knowledge of the misrepresentations set forth in this Complaint.  Such material misrepresentations were done knowingly or recklessly and for the purpose and effect of concealing Wheeler's operating condition, governance, and future business prospects from holders of Series D Preferred Stock in order to induce them into purchasing such stock.

112.    Acting in reliance on Wheeler's materially false and misleading information, as set forth above, Plaintiffs purchased Series D Preferred Stock.  Unaware of the fact that "accumulated amortization" would be included in the calculation of the Asset Coverage Ratio for purposes of mandatory redemption and that holders of Series D Preferred Stock would not have

rights to vote on material changes to Wheeler's charter, and relying directly or indirectly on the false and misleading statements made by Wheeler regarding these matters, Plaintiffs acquired Wheeler's securities.

113.    At the time of the misrepresentations, Plaintiffs were ignorant of their falsity, and believed them to be true.  Had Plaintiffs known of the true terms of the investment in Wheeler, Plaintiffs would not have purchased Series D Preferred Stock.

114.    By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

115.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs suffered damages in connection with their purchases of Wheeler's securities.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs requests that this Court enter Judgment in their favor and against Defendants:

A.   Awarding compensatory damages in favor of Plaintiffs against Defendants for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

B.   Awarding to Plaintiffs and against Defendants the costs, expenses, and attorneys' fees that Plaintiffs incurred in instituting and prosecuting this action; and

C.   Providing for such other and further relief as the Court deems just and equitable.

### Count IV
### Violation of Section 20(a) of the Exchange Act Against the Individual Defendants
### (Individual Defendants)

116.    Plaintiffs incorporate by reference all of the foregoing paragraphs of this Complaint as if fully stated herein.

117.    The Individual Defendants acted as controlling persons of Wheeler within the meaning of Section 20(a) of the Exchange Act.  By virtue of their high-level positions, and their

ownership and contractual rights, participation in and/or awareness of the Wheeler's operations and/or intimate knowledge of the statements filed by Wheeler with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of Wheeler, including the content and dissemination of the statements Plaintiffs contend are false and misleading.  The Individual Defendants were provided with or had access to copies of Wheeler's reports and statements alleged by Plaintiffs to be misleading before and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements.

118.    In particular, the Individual Defendants had direct and supervisory involvement in the operations, management, and governance of Wheeler and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

119.    As set forth above, Wheeler and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Wheeler's and the Individual Defendants' wrongful conduct, Plaintiffs suffered damages in connection with their purchases of Series D Preferred Stock.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs requests that this Court enter Judgment in their favor and against the Individual Defendants:

A. Awarding compensatory damages in favor of Plaintiffs against the Individual Defendants for all damages sustained as a result of the Individual Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

B.  Awarding to Plaintiffs and against the Individual Defendants the costs, expenses, and attorneys' fees that Plaintiffs incurred in instituting and prosecuting this action; and

C.  Providing for such other and further relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all claims in this Complaint so triable. Plaintiffs also respectfully request leave to amend this Complaint to conform to the evidence, if such amendment is needed for trial.

March 22, 2021

/s/ David G. Sommer
Paul S. Caiola (Bar No. 23940)
David G. Sommer (Bar No. 27581)
Joseph C. Dugan (Bar No. 19637)
Gallagher Evelius & Jones LLP
218 North Charles Street, Suite 400
Baltimore, Maryland  21201
(410) 727-7702
pcaiola@gejlaw.com
dsommer@gejlaw.com
jdugan@gejlaw.com

Alan F. M. Garten (Bar No. 04995)
Fedder and Garten Professional Association
10096 Red Run Blvd, Suite 200
Owings Mills, MD 21117
(410) 539-2800
amg@fedgar.com

Loukas D. Kozonis (*pro hac vice
forthcoming*)
Kozonis Law, Ltd.
4849 N. Milwaukee Avenue
Suite 300
Chicago, Illinois 60630
Telephone: (312) 283-3812
lkozonis@kozonislaw.com

*Counsel for Plaintiffs*